**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DAVID CHRISTIAN, | Case No. 1:11-cv-371 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff David Christian filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In March 2007, Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of January 1, 2003 due to both physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On October 14, 2009, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 30-42). Vocational expert Charlotta Ewers also appeared and testified. Thereafter, on June 30, 2010, the ALJ denied Plaintiff's application in a written decision. (Tr. 13-22).

The record on which the ALJ's decision was based reflects that Plaintiff was 48

years old at the time of his application, and a high school graduate. (Tr. 20). Plaintiff had no past relevant work. (Tr. 20).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "Blind left eye, major depressive disorder, personality disorder with strong history of drug addiction and alcoholism, and borderline intellectual functioning." (Tr. 14). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court. (Tr. 15). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> He is limited to work which does not require depth perception or peripheral vision; limited to simple tasks featuring minimal personal contacts and no production quotas.

(Tr. 16). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including laundry laborer, commercial cleaner, washer, hand packager and laundry folder. (Tr. 20-21). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 21).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff asserts the following assignments of error: (1) the ALJ erred in his evaluation of the opinion of Plaintiff's treating physician; (2) the ALJ's RFC assessment is not supported by

substantial evidence; and (3) the ALJ's hypothetical questions to the vocational expert did not accurately portray plaintiff's impairments. As discussed below, the Court finds the ALJ's decision is not supported by substantial evidence and should be remanded.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of

3

>
> choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. The ALJ's RFC Assessment is Not Supported by Substantial Evidence

Plaintiff's Statement of Errors focuses solely on the ALJ's evaluation of his mental impairments and does not challenge the ALJ's findings relating to his physical limitations. For the reasons that follow, the undersigned finds that the ALJ's RFC failed to properly consider Plaintiff's mental impairments in accordance with agency regulations and controlling law, thereby requiring remand.

1*. Relevant Medical Evidence and ALJ's Decision*

The record indicates that Plaintiff has a significant history of treatment for

depression, extreme difficulty interacting with others and alcohol and substance abuse. Plaintiff has been incarcerated a number of times for drunk driving, domestic violence and possession of and trafficking in narcotics. From 2005 through 2009, several medical sources, including Plaintiff's treating psychiatrist, opined that Plaintiff is unemployed due to his alcohol abuse and psychological problems. (Tr. 18, 249, 433, 62-22).

However, the record also indicates that Plaintiff's alcohol dependence went into remission in 2007 and he experienced significant improvement of his psychological impairments from counseling services and medication therapy. Notably, in 2007, Plaintiff became very active in a church. Specifically, the record shows that Plaintiff attended church functions several times each week—including being a bass singer in the choir. (Tr. 485, 497, 504, 506, 512, 519, 521, 598, 605, 607). Treatment notes from Comprehensive Counseling Services from December 2008 indicate that Plaintiff was doing well on his medication, and was very pleasant and cooperative during treatment. (Tr. 464). In June 2009, Plaintiff continued to report that his medication was working well and he had no difficulties sleeping. He was also pleasant, cooperative, and well groomed. (Tr. 591). Treatment notes further indicate that Plaintiff's coping skills were improving. Additionally, he was also able to attend family functions where he got along with others and enjoyed himself. (Tr. 469, 495, 498, 521, 591).

As noted above, at step-two of the sequential evaluation the ALJ found Plaintiff's major depressive disorder, personality disorder with strong history of drug addiction and alcoholism, and borderline intellectual functioning to be severe impairments.[1] (Tr. 14). At

---

[1] The ALJ also found Plaintiff's blind left was severe impairment. (Tr. 14). However, Plaintiff's statement of errors focuses solely on his mental impairments.

5

step-three, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings for mental disorders. With respect to the paragraph B criteria, the ALJ found that Plaintiff had marked difficulties in social functioning, moderate restrictions in activities of daily living, moderate difficulties in concentration, persistence or pace; and no episodes of decompensation. (Tr. 16). Purportedly based on these findings, the ALJ's determinated that Plaintiff was limited to performing jobs with "simple tasks featuring minimal personal contacts and no production quotas." (Tr. 16).

### 2. *Weight of the Treating Physician's Opinion*

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to give controlling weight to the Mental Impairment Questionnaire completed by Dr. Renner, Plaintiff's treating psychiatrist for nearly two years. Notably, Dr. Renner found that Plaintiff was "chronically impaired," as he was "unable to meet competitive standards" or had "no useful ability to function" in nearly all work-related mental categories. (Tr. 621-22). With respect to the paragraph B criteria, Dr. Renner opined that Plaintiff was moderately limited in activities of daily living and had extreme difficulties in maintaining social functioning and in maintaining concentration persistence or pace. (Tr. 622). Dr. Renner also opined that Plaintiff would miss more than four days of work each month. (Tr. 624). The ALJ gave "little weight" to Dr. Renner's assessment. (Tr. 19). In so concluding, the ALJ noted Dr. Renner's extreme limitations were inconsistent with the record as a whole. The ALJ's decision appears to be substantially supported in this regard.

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic

6

techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)(ii); 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544.

Here, in rejecting the opinion of Dr. Renner, and giving "little, if any weight" to his

findings, the ALJ noted that treatment notes from March 2008 indicated that Plaintiff had developed coping skills and looked forward to attend church and social events. The ALJ further noted that in June 2009, Plaintiff indicated that his current medication was working well for him, he was sleeping and eating well and looking forward to a trip to North Carolina to visit family. Thus, the ALJ concluded that the record as a whole shows that Plaintiff was doing reasonably well with counseling and medication and that his conditions have improved. As noted above, the record establishes that Plaintiff was attending church several times a week, doing well on medication and developing better coping skills. This evidence is in direct contrast to Dr. Renner's opinion that Plaintiff is "chronically impaired." (Tr. 19). Accordingly, the ALJ's findings are supported by substantial evidence

    3. *Consideration of Plaintiff's RFC & Hypothetical Question*[2]

At step-three, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings for mental disorders. Specifically, with respect to the paragraph B criteria, the ALJ found that Plaintiff had marked difficulties in social functioning, moderate restrictions in activities of daily living, moderate difficulties in concentration, persistence or pace; and no episodes of decompensation. (Tr. 16). Purportedly based on these findings, the ALJ determinated that Plaintiff was limited to performing jobs with "simple tasks featuring minimal personal contacts and no production quotas." (Tr. 16). Plaintiff asserts that the ALJ's limitation to work involving "minimal personal contacts" is insufficient to account for the marked difficulties in social functioning that the ALJ found at step three of the sequential evaluation process. (Tr. 15-16). The undersigned agrees.

    As a rule, the ALJ must build an accurate and logical bridge between the evidence

---

[2] These two statements of error will be evaluated together.

8

and his conclusion. *Fleischer v. Astrue*, 774 F. Supp.2d 845, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).  Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb. 2, 1999).  *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Here, the undersigned finds that the ALJ's decision relating to the paragraph B criteria is substantially supported (*i.e.* marked difficulties in social functioning, moderate restrictions in activities of daily living, moderate difficulties in concentration, persistence or pace; and no episodes of decompensation).  Notwithstanding this determination, the undersigned further finds that the ALJ's limitation of jobs with "minimal personal contact" is ambiguous on its face, and does not clearly account for the degree of limitation Plaintiff experienced with respect to interacting with others.  Notably, the record indicates that Plaintiff has extreme difficulty dealing with others due to problems with anger management, especially when demands are placed upon him. (Tr. 15).  Specifically, Plaintiff reportedly did not work while in prison because of his difficulties dealing with others.  Furthermore, the record indicates that Plaintiff told a nurse practitioner that he would beat someone badly

if they tried to tell him what to do, such as an employer. (Tr. 439). In a progress note dated August 10, 2007, Plaintiff's therapist described his mood/affect as angry and worried, stating that Plaintiff was having violent thoughts about his angry response when being spoken to the wrong way. (Tr. 438). Treatment notes also described a recent incident in which Plaintiff's brother-in-law asked him if he had done the dishes yet, and Plaintiff went into a rage, picked up a knife and pulled it on his brother-in-law. (Tr. 460-462).[3]

As noted by Plaintiff, such a degree of difficulty with social interactions documented by the evidence of record suggests that Plaintiff would require a job that involved no personal interaction with supervisors and extremely limited interaction with coworkers and the general public. The ALJ's RFC assessment as currently written, does not clearly account for such limitations, and therefore cannot be affirmed as substantially supported.

Furthermore, the Sixth Circuit and this court have found that an ALJ's RFC assessment and hypothetical question limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010) (hypothetical question limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace). See also *Renn v. Comm'r of Soc. Sec.*, No. 1:09c-v319, 2010 WL 3365944, at *6 (S.D. Ohio Aug.24, 2010) (holding that, pursuant to *Ealy*, an RFC limiting the plaintiff to simple, routine repetitive tasks, occasional interaction with public, and only routine changes in work setting, did not properly account for the plaintiff's moderate deficits in memory, attention, and

---

[3] The Court recognizes that many of these incidents of violence occurred prior to Plaintiff going in remission for his alcoholism and his mood being controlled by medication. However, despite these "improvements" the ALJ still fond marked difficulties in social functioning.

concentration).

As detailed above, in his written opinion, the ALJ found Plaintiff had moderate difficulties with concentration, persistence or pace . (Tr. 16). However, the ALJ did not ask the VE a hypothetical including these limitations. Nor did the ALJ include these limitations in his RFC finding (or explain why he did not do so). Thus, the undersigned finds the ALJ's RFC limitations of "simple tasks" even in conjunction with "no production quotas" may not adequately incorporate Plaintiff's medically established moderate deficiencies in concentration, persistence and pace. Because the ALJ's hypothetical question failed to accurately portray Plaintiff's mental impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the jobs identified by the VE. *See White v. Commissioner of Social Sec.*, 312 Fed. Appx. 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical and mental impairments).

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused

11

the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence; and 2) formulate an RFC assessment that fully and accurately describes Plaintiff's limitations as supported by the record and provide a clear explanation for the conclusions reached therein.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                       *s/Stephanie K. Bowman*
                                       Stephanie K. Bowman
                                       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID CHRISTIAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:11-cv-371

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).